[No. 6209.]

HALL v. ALLEN.

1. **Statute of Frauds—Promise to Pay the Debt of Another** —A brother of defendant having sustained a serious injury, was carried to a hospital conducted by plaintiff. Defendant wrote plaintiff, alluding to the brother's injuries and sufferings, and the anxiety of the family and requesting frequent reports, adding, "We will gladly pay all expenses," and stating, lower down, that "all expenses will be paid later on, and we want him to have anything to make him more comfortable." The brother was a young man among strangers and without means. The letter was held to be a request on the plaintiff to continue the services required, and to create an original liability for all services subsequently rendered.—(357)

2. **Physician — Unlicensed Partner —** A licensed physician who, in connection with a partner not licensed, conducts a hospital, may sue in his own name for the professional services rendered by him to a patient who is received into such hospital. —(359)

*Appeal from San Miguel District Court*—Hon. THERON STEVENS, Judge.

Messrs. FITZGERALD & BROWN, for appellant.

Messrs. HOWE & ADAMS, for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

Only two questions are necessary to be determined in the disposition of this action. The appellee, a licensed physician in the city of Telluride, brought this suit against the appellant to recover the

sum of $1,304.50 for medical and surgical services rendered to Luther Douglas, for which he alleges the appellant requested, contracted and agreed to pay. Judgment was for the appellee in the sum of $757.50, from which the appellant appeals.

Douglas, a brother of the appellant, was seriously injured and was first taken to a hospital at Telluride, which soon thereafter closed. He was then taken to a hospital operated by the appellee and one C. D. Waggoner, under the firm name of J. Q. Allen & Company, and was there taken care of, where the greater part of the medical and surgical services were rendered to him by the appellee, for which judgment was secured. After he had been there a short time the appellee received a letter from the appellant which reads as follows:

"May 13, 1903.

"Dear Doctor:—Your prompt answer to my letter of inquiry was certainly appreciated by my sister and myself. It is the first intimation we have had that Luther was in a serious condition. It has made us feel so badly. The poor boy has suffered almost beyond expression. However, I am in hopes he is better now and you can give us more encouragement. Doctor, may I ask a favor of you, namely, that you let me know every day or two just how he is doing, and even a postal card will be appreciated. And we will gladly pay all expense. I will be here for awhile yet so you drop me a line as soon as you conveniently can do so. And wire me any time should it become necessary. As we want Mother know if you would advise us, yet we do not want to be hasty. You understand how we feel. She has ugly heart trouble. All of his expenses will be paid later on and we want him to have anything to make him more comfortable, etc.

"Dr. Hall has been jumping here, there and everywhere in the interest of Ambulance. he is hard to keep up with him. A letter to Slater Mo. will be the best place for you to write him or here to me, either one will be O. K.

"hoping to hear from you soon. Thanking you again,                    Hastily, ROSE M. HALL.''

Up to this time the appellee had no arrangement with the appellant to look after her brother, but upon receipt of this letter the books were changed and the charges for the past services, as well as those thereafter rendered, were charged to the appellant.

The jury, by instructions, were prohibited from awarding to the appellee any amount for the services rendered prior to receipt of this letter, or any portion of the hospital charges incurred at any time. This leaves for our determination the question, was this letter sufficient to justify the appellee in assuming the appellant requested such services and assumed their payment? And, if so, was such undertaking primary or collateral only, and did it justify him in making this charge against the appellant for his professional services in the attendance of her brother from that date on? In other words, when taken into consideration with the surrounding circumstances, did it justify the jury in finding that the appellant, by this letter, authorized such services, so as to make the payment thereof an original promise upon her part? From an examination of the entire letter, the relation of the parties and the surrounding circumstances and conditions under which it was written, we are of the opinion that it did, and was so understood by both parties at the time, and that the words, "And we will gladly pay all expense   *   *   *''
"All of his expenses will be paid later on and we want him to have anything to make him more com-

fortable, etc.,'' when taken into consideration with the facts that Douglas was seriously injured, was a brother of the writer, a young man twenty-five years of age, without means, and away from his people, would mean, and be construed to be, a request to the doctor to continue to render such services required, and make a reasonable charge therefor direct against the appellant. The amount of the charge does not appear to be questioned. The questions as to whether the doctor relied solely upon this employment, and, if a third person is liable at all, the promisor's undertaking is collateral, are eliminated from our consideration by proper instructions to the jury upon that phase of the case, which found adversely to the contention of the appellant, which findings we think there is sufficient evidence to sustain. The contention that the promise is not definite enough, or sufficient under our statute of frauds, is not necessary to be determined under the findings of fact of direct employment by the appellant.

In the case of *Boston v. Farr,* 148 Pa. St. 220, it appears after the physician had attended defendant's step-son for some time and had originally been employed by the step-son, who was of age, when it became necessary to perform an operation which required the attendance of another physician, the attending physician then informed the defendant that he had attended the boy up to that time without knowing whether he would be paid or not, to which defendant replied: ''If the boy dies, I don't want any blame resting on me. You go and get the doctor and do all you can for the boy. I will see that you get your pay.'' A finding, under proper instructions, that this was an original promise was affirmed by that court.

Also, in the case of *King v. Edmiston,* 88 Ill. 257, somewhat similar to this, it was held that the defend-

ant had undertaken to be responsible for the subsequent visits and was bound thereby, but was not liable for anything prior to his request that the physician continue his labors. In this case, by instructions to that effect, the jury found the appellant was not liable for anything prior to the request contained in her letter, nor for any hospital charges.

The other assignments necessary for consideration are: that there was a defect of parties plaintiff, and that the court erred in refusing to allow the appellant to show that a partnership existed between the appellee, a duly licensed physician, and one C. D. Waggoner, who was not a physician and who had no right to practice medicine, and that error was committed in rejecting this partnership contract as evidence to establish these facts. With this contention we cannot agree. The partnership contract offered concerned the management of the hospital, and provided that the appellee, together with one other physician employed by the firm, should perform the medical and surgical work, and also provided for the disposition of all funds received, including those for the services rendered by the physicians. The services for which judgment was secured were the professional services rendered by the appellee in his professional capacity; and, as held by this court as to an attorney's fees in the case of *Hittson v. Browne et al.*, 3 Colo. 304, such an action cannot lie in a partnership name, for so far as Mr. Waggoner was concerned he was not a physician and did not attempt to practice or render such services. Our statute prohibits any person from practicing medicine without a license and imposes greater penalties upon those attempting to do so than it does upon those attempting to practice law without a license. The same rules should apply to both, and the reasoning and principles in the above case are controlling here.

It is immaterial to the appellant what contractual relation existed between the appellee and Mr. Waggoner or what the appellee should do with moneys received for his services when procured. Neither did it concern the appellant, when suit was brought against her for services rendered by him in his professional capacity, what became of the money where there is no claim that he assigned or otherwise disposed of it other than by a contract showing he had a partner in the business covering the operation of a hospital, including the receipts from his professional services. The correct test of when a party is a necessary one and when a defendant can raise the objection of a defect of parties, is where it appears that some other person than the plaintiff has such a legal interest in the obligation sued upon that a recovery by the plaintiff would not preclude its being enforced by such other party, and the defendant being thereby subjected to the risk of another suit upon the same subject.—*Bingel et al. v. Brown et al.,* 15 Col. App. 241.

At common law an assignment of a part of an entire claim does not give the assignee a right of action in his own name. This doctrine seems to have been accepted in this jurisdiction.—*Smith et al. v. Atkinson,* 18 Colo. 255. The contract, which was offered as evidence and rejected, was in no way an attempt to make an assignment of this or any other particular claim of the doctor's for professional services, nor of any part thereof, and no error was committed in sustaining the objection to its introduction.

The judgment will be affirmed.     *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.