[No. 3780.]

ANDERSON, ADMINISTRATOR, v. DAILEY.

1. PLEADINGS—*Guaranty*—*Complaint.* Action against a mining corporation and one who had acted as manager of its affairs for the wages of

plaintiff, the complaint being in the common counts for work and labor. The evidence showed that, at most, the individual defendant was a mere guarantor that the corporation would pay. *Held* there could be no recovery.

2. STATUTE OF FRAUDS—*Need Not Be Pleaded*, where the plaintiff declares in the common counts.

3. CONTRACTS—*Guarantor or Original Contractor.* Action against two as original contractor. The evidence examined and held to show incontestably that one defendant was a mere guarantor.

MORGAN, J., dissenting.

*Appeal from Teller District Court.* HON. JAMES OWEN, Judge.

Mr. HENRY TROWBRIDGE, Messrs. STOKES & SHERMAN, for appellant.

Mr. CHAUNCEY W. BLACKMER, Mr. THORNTON H. THOMAS, for appellee.

CUNNINGHAM, Presiding Judge.

Dailey, the appellee, filed his suit in the district court against The Friday Mining and Leasing Company, and Phillip Schuch Junior, to recover for services which he alleged that he had performed for the defendants at their special instance and request. The mining company made no appearance. Schuch answered a general denial. Judgment went against the mining company for $678, and against Schuch for $535—a verdict having been rendered for these amounts. After judgment was rendered by the lower court Schuch died, and Anderson, his administrator, was substituted as appellant.

There is but a single question presented for our determination, *viz.*, was Dailey employed by Schuch, or was the latter simply a guarantor? If a guarantor, Schuch cannot be held liable under the pleadings, since it is conceded, as indeed it must be, that the complaint was upon the common count, and charges a joint liability

on the part of the defendants, and the trial court instructed that:

"To entitle the plaintiff to recover a verdict at your hands against the defendant, Schuch, he must satisfy you by a preponderance of the evidence that the defendant Schuch employed him and agreed to pay him and not that the defendant Schuch guaranteed the payment of the indebtedness of the Friday Mining and Leasing Company."

There can be no question but that the services rendered by plaintiff were performed upon mining property belonging to the mining company—a corporation—and operated by it. Schuch was an officer and stockholder of the company, and appears to have had general charge of its mining operations. It is also certain that Schuch frequently, from time to time, urged Dailey to remain at work on the property, and assured him that he (Schuch) would see that he got his money—his wages. These assurances were made orally and by letters, and were couched in language, at times, indicating that he (Schuch) would see that the company paid, and at other times indicating that he (Schuch) would pay from his own funds. Schuch's assurances that the company would be in funds and pay cannot, of course, create any personable liability against him.

But two witnesses were called—Dailey and Schuch. Schuch's testimony was unequivocal that he (Schuch), acting as the representative of the mining company, employed Dailey for that company, and that he never employed him personally. While there are certain phrases or sentences in Dailey's testimony which might bear the construction that he was employed by Schuch, to work for him personally, still, when fairly considered, his own testimony establishes quite the contrary. For instance, Dailey testified that Schuch

"Told me the company were doing the best they

could to raise money, but that he would pay me what was owing me himself.''

He also testified that:

''$952.50 is due me from the Friday Mining and Leasing Company.''

And again:

''I was working for the Friday Mining and Leasing Company. Schuch said he would guarantee the money.''

Plaintiff introduced a letter from Schuch to himself, containing the following:

''After our telephone talk this morning I have decided to write you a statement in full, so that you may assure all the men to whom some money is due (Dailey appears to have been foreman at the mine) from the Friday Mining and Leasing Company, that I will personally see that they get every cent that is due them within a very few days. I have got sufficient subscriptions to make good, and I will have money in the company's treasury, and I shall also request the secretary and treasurer to issue the checks as soon as the money comes in, until all accounts are paid.''

And in another letter, which was put in evidence, Schuch writes Dailey as follows:

''You can rest assured, and can assure the men, that I will stick to them and see that they get their money, even if I have to sacrifice my personal property to make up the company's affairs, which have been entrusted to my care.''

If Schuch had employed Dailey personally, and personally obligated himself to pay, there could have been no occasion or justification for any assurances from Schuch that he would pay him, ''even if he had to sacrifice his personal property to make up the company's affairs.'' These letters make it clearly apparent that Schuch did not regard himself as obligated in the first instance to Dailey by any contractual relation. That Dailey under-

stood that he was employed by the mining company, and was working for it, and not for Schuch, is equally apparent, not only from what we have already quoted from his testimony, but from the further fact that all payments which he received for his wages were made by company checks, and his time-book, kept by himself, was headed: ''Services rendered for the Friday Leasing Company,'' and all bills were rendered by him to the company. Indeed, not until he filed his complaint did he ever, so far as the record indicates, intimate that he had any legal right to look to, or claim upon, Schuch for his wages. It is possible that there may have been a very short period of time when, under the most favorable construction of the evidence, Schuch may have become personally and directly responsible to Dailey, but if so, the time covered by such change in the relationship, if there was any change, was short, and the amount earned under it small.

As we have said, the sole question is, can Dailey, on a complaint on the common counts, averring that Schuch employed him jointly with the company, to work for him (Schuch) and the company, recover where the proof clearly shows there was no such employment at all, and that at most Schuch was a guarantor only? This question must be answered in the negative, if pleadings are to cut any figure whatever in a case. To rule otherwise would be as flagrant a violation of all rules of pleading as to permit one who has sued in tort to recover on *quantum meruit,* if the proof chanced to show defendant not guilty, but that he owed plaintiff for services performed. Against a complaint charging liability as a guarantor, Schuch may have been able to successfully plead the statute of frauds, though we do not so decide. Counsel for appellee suggest in their brief that defendant did not plead the statute of frauds as a defense, but denied generally. There are two sufficient answers to

this suggestion, *viz.:* 1. Schuch's right to have this judgment reversed in no manner rests upon the statute, but upon a fatal variance between the pleadings and the proof. 2. A defendant is not required to plead the statute,

"Where the plaintiff sues on the common count, and therefore, does not disclose the foundation. of his case until he puts in his evidence."—Brown's Statute of Frauds (5th Ed.), sec. 508; *Durant v. Rogers,* 71 Ill., 124-5; *Solomon v. McRae,* 9 Colo. App., 26, 47 Pac., 409.

Much as we dislike to disturb the judgment of a trial court, or reverse judgments for errors pertaining to pleadings, no alternative is left us, since it cannot be said that the substantial rights of the defendant were not prejudiced by the errors to which we have called attention. The trial judge should have sustained the motion for a directed verdict interposed by defendant at the close of plaintiff's testimony.

*Judgment Reversed.*

MORGAN, J., dissenting:

The majority opinion is based upon the conclusion that the lower court should have sustained Schuch's motion for a directed verdict at the close of the plaintiff's case. It is unnecessary to cite authorities that, where the plaintiff's evidence tends to prove the allegations of his complaint, such motion should be denied. The issue that was tried in this case was upon Schuch's individual liability, as an original promisor, for the payment of the plaintiff's services. The question before this court is, was the evidence sufficient to justify the court in submitting such issue to the jury? The complaint was upon an indebtedness for services performed, *indebitatus assumpsit.* Answer, general denial. The majority opinion concludes that the plaintiff's testimony shows that Schuch's promise was within the statute of frauds. The lower court did not think so, nor did the jury, and this court should not interfere if the evidence tended to prove the

allegations of the complaint, or, if there is a conflict in the entire evidence on which the issue was submitted.— *Union Coal & Coke Co. v. Edman,* 16 Colo., 438, 440, 27 Pac., 1060; also *Colo. Coal & Iron Co. v. John,* 5 Colo. App., 213, 38 Pac., 399.

A reversal is in violation of the code provisions as to substantial rights (sec. 78, Mills Ann. Code) and subversive of a rule established by many decisions of our courts, concerning judgments on conflicting testimony.

Schuch was general manager, stockholder and president of the mining company, and, as such, hired plaintiff as a time-keeper and laborer, in December, 1907, and the plaintiff continued to work for the company up to July 6, 1908. His wages were not paid for June and he took up the matter with Schuch concerning the payment thereof. They had some talk about it over the telephone, and otherwise, and some letters passed between them as to the matter. Plaintiff's version of it is that Schuch agreed to pay his wages individually from and after that time if he would continue to work; Schuch denied it, and this was the issue tried. The court by the instruction quoted in the majority opinion, eliminated any other issue. The following extracts from plaintiff's testimony show the basis of the court's ruling, and the jury's verdict:

"Q. Now, what I am getting at, did you have a conversation on the 6th day of July, 1908, with Mr. Schuch with reference to his paying you from that time on? A. Very close to the 6th, if not the 6th.

"Q. What did he say to you with reference to your continuing working on for him? A. He said he would pay it himself.

"Q. About when was the conversation you had with Mr. Schuch with reference to getting your pay? A. Have had a good many conversations about it.

"Q. What did he say with reference to that letter?

A. I was talking about the money and he said he would pay it.

"Q. You had two conversations with him? A. Yes, sir.

"Q. And in both of these conversations he referred to these two letters? A. Yes, sir. He said he would pay this money himself."

On cross-examination, in reference to Schuch's first promise:

"Q. For how long a time had he been telling you that? A. Let me see—from the first he owed me. I think that was in June. It was the first time he paid the rest and didn't pay me.

"Q. What did he say about you continuing working there? A. He wanted me to stay right on with him."

In reference to his time-book containing daily time of himself and the other men:

"Q. Tell the jury what it has at the head? A. 'Labor performed for the Friday Leasing Company.'

"Q. And you never put Phillip Schuch's name in any of these statements? A. I don't think I did. He told me to make out my statements that way.

"Q. From the last of June, 1908, to the present time the Friday Mining & Leasing Company have been owing you something all the time? A. Schuch has been owing me. It has never been squared up.

"Q. And except for what Mr. Schuch wrote in letters to you he didn't say anything more than was said to you on or about the 6th of July, 1908, about paying you? A. Why, about paying me, he has told me time and again he would pay me.

"Q. Now, will you tell this jury exactly what words Mr. Schuch said to you whereby he hired you to work for him? A. He told me to stay with him and he would pay me. That's the words.

"Q. Until you commenced this suit did you ever

make a demand upon him personally. to pay this or any part of this time account? A. Yes, sir.

"Q. In what way? By letter or word of mouth? A. I don't know whether by letter or not.

"Q. And did he not reply that the company was getting in money as best it could from the stockholders? A. He has told me the company were doing the best they could to raise money but that he would pay me what was owing me himself.

"Q. Now, you went to Denver once, did you not, at Mr. Schuch's expense, and as the guest of the company and were entertained there at the Shirley Hotel? A. I was there at the Shirley with the exception of twelve days.

"Q. Do you recollect when that was? A. I think last 4th. I am pretty certain it was last 4th.

"Q. In 1909? A. Well, I couldn't tell you. Sometime in July last year.

"Q. Did you at that time make claim upon Mr. Schuch personally to pay you the money then owing you? A. At the time that I was there?

"Q. Yes. A. I asked him for it and he said he would pay it.

"Q. Who was present? A. I don't know. I never dunned him for money in the presence of anybody.

"Q. Wasn't the directors there? A. No, sir. There was a gathering at that time and he took me to Mr. Peterson and wanted me to tell them what I knew of the mine.

"Q. Then you say at that time you made a personal request to pay the money he owed you and he said he would? A. Yes, that's all. I think he paid me $2, but he said, "You need not make any account of it."

It is true the plaintiff testified that Schuch "guaranteed" the payment of his wages as quoted in the majority opinion, but it was in regard to money earned prior to July 6, 1908, and it was in answer to the follow-

ing question: "I will ask you who you were working for then during the month of June, 1908, and the first six days of July, for Schuch or the Friday Mining and Leasing Company?"

In addition to the quotations from Schuch's letters in the majority opinion I quote the following: .

"Now, Mr. Dailey, I want you and Judson to do me one favor and if any of the other boys are willing to, I will gladly do for them on the same basis.   *   *   *

"Now, Mr. Dailey, I want you and Judson to help me hold the Friday Mine until I can get the money together to clean up its debts and proceed with the development work just enough to hold the contract."

Schuch further testified on this issue:

"I wrote the letter of October 22, 1908, and I intended to see those men paid.   *   *   *

"I would say there was then some conversation to the effect that I wanted Mr. Dailey to continue with the mine and stick to me and I would stick to him."

If Schuch would say this, together with his letters quoted in the majority opinion, in writing, does it not indicate the truth of plaintiff's testimony as to what he said, orally? From any viewpoint, was there not enough in the testimony to justify the court in submitting the issue to the jury?

At the close of the evidence Schuch asked for an instruction to the effect that there was no evidence to bind him individually, which the court refused, but gave two instructions requested by him, one quoted in the majority opinion and the other as follows:

"In any event a verdict against the defendant, Philip Schuch, cannot be recovered for more than the amount of unpaid indebtedness which has accrued since the 6th day of July, 1908."

Schuch's request for these instructions, and the giving of them, shows clearly the issue that was tried. No

attempt was made to hold Schuch as a guarantor, and the court took such consideration from the jury and limited the jury's deliberations to one issue alone.

In the late case of *Hall v. Allen*, 46 Colo., 355, 104 Pac., 489, the supreme court held a similar promise not within the statute. Allen was a physician and had been attending Mrs. Hall's brother in a hospital for a short time, and while so attending him, received a letter from Mrs. Hall making inquiry, and on answering it, received the letter copied in the court's opinion, page 356, wherein she said:

"Doctor, may I ask a favor of you, namely, that you let me know every day or two just how he is doing, and even a postal card will be appreciated. And we will gladly pay all expense. *  *  *

"All of his expenses will be paid later on and we want him to have anything to make him more comfortable, etc."

The court held this was "a request to the doctor to continue to render such services required," and the court said:

"The questions as to whether the doctor relied solely upon this employment, and, if a third person is liable at all, the promisor's undertaking is collateral, are eliminated from our consideration by proper instructions to the jury upon that phase of the case, which found adversely to the contention of the appellant, which findings we think there is sufficient evidence to sustain."

The opinion cites *Boston v. Farr*, 148 Penn., 220, 23 Atl., 901. In that case a physician had attended defendant's stepson for a time and, another physician's assistance being needed in an operation, he stated to defendant that he did not know whether he would be paid or not, and defendant replied:

"If the boy dies I don't want any blame resting on

me. You go and get the doctor and do all you can for the boy. I will see that you get your pay.''

The court held this was an original promise. *King v. Edmiston,* 88 Ill., 257, is also cited, wherein the court held the promisor liable for a physician's services from and after an offer and request that he ''continue his labors.''

If services are performed for, or goods sold to, one person at the request of another, and the credit is given to him, he is liable.—*Geary v. O'Neill,* 73 Ill., 593. Schuch requested the plaintiff to continue working for the mining company, saying he would pay the plaintiff himself if he would continue his work. Plaintiff had refused to credit the company any longer and must have given credit to Schuch thereafter.

That plaintiff put at the top of the page of daily time record for the other men and himself the words, ''Labor performed for the Friday Leasing Company,'' does not show that plaintiff credited the company; furthermore, he testified that Schuch told him to make his statements that way. Plaintiff was looking after everything as superintendent, hired the men, kept the time for all, along with that of his own, and sent the statement for all to Schuch, in Denver. Checks were returned and plaintiff paid men. Plaintiff never kept a separate personal account nor did he present any separate personal statement. The majority opinion says he never demanded payment of Schuch individually prior to the suit, but the foregoing testimony shows the contrary.

Schuch had an individual as well as a representative capacity and his representative capacity did not bar him from acting as an individual. The contested fact was peculiarly a question for the jury. They saw the witnesses on the stand, observed their demeanor, and so did

the court; the jury found the issue for the plaintiff; the court ordered judgment thereupon and denied a new trial; the judgment should stand.