No. 18,770-18,771.

H. E. STICE v. ELMER H. PETERSON.
(355 P. [2d] 948)

Decided October 10, 1960.

Mr. EDWARD PHILIP KURZ, Mr. ROBERT A. LEHMAN, for plaintiff in error.

Mr. WILLIAM E. DOYLE, Mr. RICHARD J. BERNICK, for defendant in error.

*In Department.*

PER CURIAM.

THE parties will be referred to as they appeared in the trial court, where plaintiff in error was plaintiff and defendant in error was defendant.

Two separate cases were consolidated in the trial court, but are before this court on separate writs of error. Plaintiff seeks review of adverse judgment. The cases are consolidated here for the purpose of review.

The first case (18,770) is a money demand. The second (18,771) is based on an alleged breach of contract. Although the matters which allegedly gave rise to these actions occurred in early 1951, the first suit thereon was filed December 5, 1956, and a second complaint was filed a little over nine months later, on September 27, 1957.

The essential facts upon which these cases turn can be better understood if treated chronologically.

In June of 1950, Stice sold his control of the stock of the Colorado Pre-Mix Concrete Co. to a group called the Meyers group, and as a part of the consideration gave a ten year non-competition covenant. After the sale the defendant Peterson, at the urgings of Stice, consented to and did build another concrete plant. While this plant was being constructed plaintiff learned that the Meyers group was threatening to sue for a breach of his covenant not to compete. Stice informed Peterson of this and they both consulted Peterson's attorney, who con-

firmed the fact that the plaintiff was in breach of his agreement not to compete for a period of ten years.

Upon being informed that there was no possible way to circumvent this agreement, Stice proposed that he buy back the Colorado Pre-Mix stock he had sold six months previously.

Stice checked the asking price and found it to be $200,000 or $100,000 more than had been paid for it. He also discovered that the Meyers group would have nothing to do with him personally. At this point, about the first of January 1951, Peterson indicated his willingness to assist Stice with the proposed re-purchase of stock provided Stice was unable to do it alone.

Stice retained Peterson's lawyer for the purpose of repurchasing the stock as agent for an undisclosed principal, and a contract to this effect was executed on January 11, 1951.

The offer was made to the Meyers group and was promptly accepted on January 12. The purchase agreement called for payment and delivery of the stock in two installments. The first installment, covering two-thirds of the stock, was to be completed on January 17, 1951. The remaining one-third was to be paid for and delivered by October 1, 1951 (this was later extended to January 1952).

On January 13, 1951, Stice and Peterson entered into a written agreement whereby Peterson was to advance any monies needed by Stice to fulfill the October 1st commitment, *provided* Stice was unable to borrow the money elsewhere, and *provided* Stice gave notice to Peterson of his inability to secure the necessary funds. As security for these advances, Stice was to assign all the common and preferred stock of Colorado Pre-Mix Concrete Company to Peterson, and to enter into a ten year sand and gravel contract with Peterson's Rio Grande Gravel Company.

At this point we underscore the fact that this agreement was entered into by both parties approximately

two weeks subsequent to the alleged oral agreement, upon which the plaintiff based his first action, and under which it is claimed Peterson was to reimburse Stice to the extent of $100,000 and upon which it is alleged $20,000 was given as part payment.

One month later the bank which had extended a line of credit to the Meyers group withdrew their support from Colorado Pre-Mix. This was a vital part of the batch business and necessitated the making of a new credit contact immediately. Through the plaintiff's and defendant's mutual lawyer, plaintiff got the backing of the International Trust Co. However, the trust company, as a condition to extending credit, required Peterson to guarantee it, which he did. To secure Peterson as guarantor the parties entered into another agreement whereby plaintiff was to assign all of the stock he then owned in Colorado Pre-Mix to Peterson. This is the same stock plaintiff was obligated to assign under the January 13 agreement, if an advance by Peterson was necessary to complete the pending October 1 transaction.

On June 1, 1951, Peterson and one Burt bought fifty per cent of the Colorado Pre-Mix stock from Stice. This was to provide funds for Stice's completion of the October 1 (now January 17, 1952) purchase agreement. The contract recited the plaintiff's inability to meet the amount required to consummate the deal. The price paid for the fifty per cent interest in Pre-Mix was $126,000, which included fifty per cent of the preferred stock. The amount required to meet the final installment coming due in January was $66,800.

On December 20, 1951, Stice and Peterson entered into an agreement which recited that there had been disagreement as to the value of services rendered by Stice over the past two years in the obtaining of sand and gravel contracts, and that Peterson would pay to Stice $20,000 in compromise of such matters, up to and including December 31, 1951.

On February 20, 1952, Stice sold his remaining fifty per cent interest to Peterson and Burt for $66,800. Prior to this Stice had completed payment for the final installment of stock to the Meyers group. In addition to the price paid for his remaining stock, Stice was given a $48,000 employment contract payable $1,000 per month for four years. As consideration therefor he covenanted not to compete with Colorado Pre-Mix within a radius of 50 miles for 10 years, and to act as a director and consultant in a newly formed combination of three cement companies, in which Peterson owned a substantial interest.

Twenty-two and one-half months after the last payment on his non-competing employment contract, Stice filed suit for $80,000 based on the alleged oral agreement between Stice and Peterson made prior to the execution of their January 13, 1951, written agreement. Nine and one-half months later Stice brought the second suit for $120,000 in damages, this time alleging breach of the contract of January 13, 1951.

At the close of the plaintiff's evidence in the first case, defendant's motion to dismiss was granted. A summary judgment was granted in the second case.

I.

Both parties argue the question of whether the agreement of December 20, 1951, was a compromise agreement or a part payment on the alleged oral agreement to pay $100,000. Under the circumstances shown the parol evidence rule is controlling. Extrinsic evidence will not be permitted to vary, contradict or explain the unambiguous written agreement. See *Brown v. Barth,* 67 Colo. 214, 184 Pac. 300. The agreement was a compromise of disagreements as to the value of services rendered by the plaintiff to the defendant with respect to sand and gravel contracts allegedly obtained by Stice, and did not mention any $100,000 agreement.

This being determined, the question remains as to the effect of the parol promise allegedly made sometime

prior to January 13, 1951, whereby plaintiff contends $100,000 is still due and owing (although he is content to ask for only $80,000, crediting the $20,000 to the total amount).

The plaintiff has attempted to attribute to this alleged oral promise the stature of an enforcible contract, contending that he acted in reliance thereon to his detriment.

In *Newton Oil Co. v. Buckhold,* 115 Colo. 510, at page 518 (176 P. (2d) 904), the court set down certain fundamentals which are here applicable:

"A fundamental contractual requirement is that of certainty. The minds of the parties must have met. * * * 'The offer must not merely be complete in terms, but the terms must be sufficiently definite to enable the court to determine whether the contract has been performed or not.' 1 Page on the Law of Contracts, page 135, §95. 'As a promise may insufficiently specify the price to be paid, so the consideration for which the price is to be paid may be left equally uncertain, and in such a case it is not usually possible to invoke the standard of reasonableness in order to give the promise sufficient definiteness to make it enforceable.' 1 Williston on Contracts, Revised Edition, page 119, §42. 'The court can supply some elements in a contract, but they cannot make one; and when the language in a contract is too uncertain to gather from it what the parties intended, the courts cannot enforce it.' *Ryan v. Hanna,* 89 Wash. 379, 154 Pac. 436. * * * 'An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.' Restatement of the Law — Contracts, p. 40, §32. * * * "

▌ Here the alleged oral contract leaves all terms and conditions in doubt. For example: When does the obligation arise; when and how is it to be paid; what are the terms of payment? Such incomplete and ambiguous contracts have been condemned by this court.

See *Greater Service Homebuilders Investment Assoc., et al. v. Albright,* 88 Colo. 146, 293 Pac. 345; *American Mining Co. v. Himrod-Kimball Mines Co., et al.,* 124 Colo. 186, 235 P. (2d) 804; and *Mestas v. Martini,* 113 Colo. 108, 155 P. (2d) 161.

The plaintiff himself was completely uncertain as to what was actually said by the defendant. The testimony is too vague and indefinite to support a claim that a contract ever existed.

The contract of January 13 quite succinctly and definitely put to rest any notion of a reimbursement for any sums laid out by Stice for purchases in excess of $100,-000. It merely stated that if Stice could not meet the October 1st deadline for the purchase of the final one-third of outstanding stock because of his inability to find lenders for the balance required of him, Peterson would advance the necessary money. This was not to be a gift. Security for repayment was required to be given in the form of all stock the plaintiff held. Furthermore, the loan would be forthcoming only if the plaintiff was unsuccessful in obtaining it elsewhere and gave the defendant notice of his inability to do so.

It is unnecessary to discuss other grounds upon which to rest our affirmance, such as laches and estoppel, which were ably argued in the trial court.

II.

The trial court's granting of the defendant's motion for summary judgment in the breach of contract case rests on the Statute of Limitations.

The claim, based on breach of contract, was not filed within six (6) years after it accrued, and hence it is barred by C.R.S. '53, 87-1-11, which provides:

"The following actions shall be commenced within six years after the cause of actions shall *accrue,* and not afterwards:

\* \* \*

"(4) All actions of assumpsit, or on the case founded

on any contract or liability, express or implied." (Emphasis supplied.)

Counsel for the defendant Peterson contend that the alleged claim in the instant case accrued prior to June 1, 1951. Counsel for the plaintiff contend, on the other hand, that it accrued at a much later date, and that there was an anticipatory breach, and relies on Sec. 322 of the Restatement of Contracts which states that, in the event of an anticipatory breach, "the period of the Statute of Limitations begins to run only from the time so fixed by the contract."

In other words, the plaintiff is maintaining that he did not choose to treat the January 13th agreement as repudiated by either the February 16th or June 1, 1951, agreement. He, therefore, was giving the defendant until January 17, 1952, to make amends for the alleged injustice.

It is clear that from and after the signing of the June 1, 1951, agreement, the subject matter of the January 13, 1951, agreement upon which plaintiff now relies as the basis of his claim (the loan by Peterson) was no longer applicable. The funds which Stice sought were supplied, and obviously any demand for compliance with the January 13th provisions relative to a loan had to be made on or before the June 1, 1951, date.

Stice, under oath, firmly committed himself to the fact that the contract upon which suit is based was violated prior to June 1st. He alleges the only reason he sold his stock and entered into the June 1st agreement was because of the defendant's refusal to lend him the money with which to purchase the remaining block of stock as per the January 11th contract with the Meyers group.

Stice stated that the June 1st contract was entered into after his demand or notice to Peterson that he needed the money. As stated in 34 Am. Jur. 97, Sec. 118, the general rule is that a claim for breach of contract accrues as of the date that notice or demand is

made. At page 112 it states that where (as in the instant case) demand or notice is a condition precedent, it is universally held that the statute of limitations does not commence to run until the notice or demand is given, subject to the limitation that the notice or demand cannot be postponed indefinitely. See, too, *Bowes, Executor v. Cannon,* 50 Colo. 262, 116 Pac. 336, where this court recognized the rule that a cause of action for breach of contract accrues as of the date that a demand is made.

At bar the demand or notice was admittedly made prior to June 1st, 1951, and the plaintiff is committed to that date, which completely nullifies his contention that the cause accrued at a later time. The Statute of Limitations being a bar to the action, it is unnecessary to consider the other assignments of error and theories presented and argued in the briefs.

The trial court ruled correctly in granting the defendant's motion for summary judgment in No. 18,771.

The judgments are affirmed.

MR. JUSTICE MOORE, MR. JUSTICE KNAUSS, and MR. JUSTICE HALL concur.