James T. BRADSHAW, Jr. and Ursula Bradshaw, Plaintiffs–Appellants,

v.

Don L. NICOLAY, M.D.; Kenneth Lawson, M.D.; Paul K. Lewis, M.D.; Kenneth Moorehead, as Personal Representative of the Estate of Roger D. Niehoff, M.D., and Community Hospital Association, d/b/a Boulder Community Hospital, Defendants–Appellees.

No. 86CA0748.

Colorado Court of Appeals, Div. V.

Aug. 11, 1988.

Rehearing Denied Sept. 8, 1988.

Certiorari Denied Dec. 27, 1988.

Johnson & Mahoney, P.C., Collie E. Norman, Karen B. Best, Denver, for defendants-appellees Paul K. Lewis, M.D. and Kenneth Moorehead.

Cooper & Kelley, P.C., Frank R. Kennedy, Denver, for defendant-appellee Community Hosp. Assn.

Williams, Trine, Greenstein & Griffith, P.C., William A. Trine, Bruce O. Downsbrough (on the briefs), Boulder, for plaintiffs-appellants.

Pryor, Carney and Johnson, P.C., JoAnne M. Zboyan, Elizabeth C. Moran, Englewood, for defendants-appellees Don L. Nicolay, M.D. and Kenneth Lawson, M.D.

PLANK, Judge.

Plaintiffs, James T. Bradshaw, Jr. and Ursula Bradshaw, appeal from the judgment dismissing their claims against defendants for outrageous conduct and for recovery of damages under the Wrongful Death Act for loss of consortium, grief, and sorrow, and an order entering summary judgment for defendants Don L. Nicolay and Kenneth Lawson on plaintiffs' claims for breach of contract. We affirm.

This action concerns events surrounding the death of plaintiffs' nineteen-year-old son, Jeff, who was a student at the University of Colorado in Boulder. Jeff was injured in a diving accident, and, as a result, was ultimately hospitalized at defendant Boulder Community Hospital (Hospital). There he was treated by defendant Nicolay, and was discharged after three days. Roger D. Niehoff read the x-ray films the day after Jeff was admitted and reported normal findings.

Four days after he was discharged, Jeff had a convulsive seizure after doing push-ups and was taken to the Hospital's emergency room. Paul K. Lewis was the physician on duty in the emergency room when Jeff arrived. Lewis neither treated nor examined Jeff until Jeff's return to the emergency room later that night. Instead, Defendant Lawson, who was on call for Dr. Nicolay, examined Jeff. Dr. Lawson elected not to admit Jeff to the Hospital, attributing his chest pain to a muscle cramp. About two hours later, Jeff was taken back to the emergency room by friends, and remained there for a time before being transferred to the intensive care unit. Before Dr. Lawson gave orders transferring Jeff to the intensive care unit, Dr. Lewis examined Jeff, determined that the patient was deteriorating, called Dr. Lawson again and obtained the assistance of another specialist in order to proceed with treatment. Jeff died soon thereafter. An autopsy revealed the cause of death to be a ruptured aorta caused by the diving accident.

I.

Plaintiffs first contend that the trial court erred in entering summary judgment for defendants Nicolay and Lawson on plaintiffs' breach of contract claims. We disagree.

Plaintiffs claim that Drs. Nicolay and Lawson entered into a separate contractual relationship with them to "check Jeff out thoroughly" and to notify them of any change in Jeff's condition. The Bradshaws assert that, as consideration for this contract, they assumed responsibility for Jeff's medical expenses, and did not make arrangements for alternate treatment for Jeff.

■ We disagree with plaintiffs' contention that they had a separate contract with Drs. Nicolay and Lawson for plaintiffs' own benefit. Even if we assume *arguendo* that Dr. Nicolay promised that he would "check Jeff out thoroughly" and that he would let the plaintiffs know of any change in Jeff's condition, there was no consideration for either of these promises. *See Dorney v. Harris*, 482 F.Supp. 323 (D.Colo. 1980); *Rogala v. Silva*, 16 Ill.App.3d 63, 305 N.E.2d 571 (1973).

■ Drs. Nicolay and Lawson received only their usual fees for their medical and surgical care for Jeff. Further, the two physicians were not aware of any undertaking by the plaintiffs to pay for Jeff's medical services. In order for plaintiffs' payment to constitute consideration for the alleged contract, the payment must have been offered by plaintiffs and accepted by the doctors as an element of the contract.

*See Fire Insurance Ass'n v. Wickham,* 141 U.S. 564, 12 S.Ct. 84, 35 L.Ed. 860 (1891); *Stice v. Peterson,* 144 Colo. 219, 355 P.2d 948 (1960); *Cf. Hall v. Allen,* 46 Colo. 355, 104 P. 489 (1909) (express written promise to pay). Furthermore, the doctors had no knowledge that plaintiffs intended to call in another doctor. Thus, plaintiffs' "forebearance" could not have been part of the bargain. *See Fire Insurance Ass'n v. Wickham, supra; Stice v. Peterson, supra.*

## II.

■ Plaintiffs also contend that the trial court erred in dismissing their outrageous conduct claim against defendants. We disagree.

Plaintiffs alleged that they suffered extreme emotional distress when they learned after their son's death of defendants' alleged manner of treatment of their son. They claim that defendants' conduct was directed at them as well as their son. They also assert that defendants knew, or should have known, that plaintiffs would learn of defendants' outrageous conduct and suffer extreme emotional distress as a result.

Plaintiffs' outrageous conduct claim is based on Restatement (Second) of Torts § 46 (1965), which provides:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family *who is present* at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm. (emphasis added)

Here, defendants' alleged conduct does not come within Restatement (Second) of Torts § 46(1) because it was directed at Jeff, not at plaintiffs. Plaintiffs' argument that the conduct was directed at them is unconvincing in light of the distinctions drawn between subsections (1) and (2) of § 46, and as a matter of normal and customary understanding. This was not a situation where Drs. Lawson and Nicolay made outrageous statements or acted egregiously during their direct contacts with plaintiffs over the phone or in person. *Cf. Rugg v. McCarty* 173 Colo. 170, 476 P.2d 753 (1970) (where plaintiff was the subject of the outrageous conduct).

Further, because plaintiffs were not present when the alleged conduct directed at Jeff occurred, there is no basis for recovery under Restatement (Second) of Torts § 46(2)(a). *See Healy v. Counts,* 536 F.Supp. 600 (D.Colo.1982); *Hale v. Morris,* 725 P.2d 26 (Colo.App.1986).

## III.

Finally, plaintiffs contend that the trial court erred in dismissing their claims for loss of consortium, grief and sorrow under the Wrongful Death Act, §§ 13–21–202 to 13–21–204, C.R.S. (1987 Repl.Vol. 6A). We disagree.

■ Defendants have chosen not to contest the amount of damages recoverable under § 13–21–203. Accordingly, they have tendered into court the maximum amount of damages recoverable here under that statute. Thus, plaintiffs' argument is moot. The damages recoverable by plaintiffs under the Wrongful Death Act would not exceed the amount already tendered by defendants, regardless of the nature of the claimed loss. Colorado appellate courts consistently have adhered to the rule that parental grief is not an element of damages under the Wrongful Death Act. *See Kogul v. Sonheim,* 150 Colo. 316, 372 P.2d 731 (1962); *Millican v. Wolfe,* 701 P.2d 107 (Colo.App.1985) (certiorari dismissed as improvidently granted October 21, 1986).

The judgment is affirmed.

VAN CISE and FISCHBACH, JJ., concur.