**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 2 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

VICKI POWELL,

     Plaintiff-Appellant and Cross-Appellee,

v.

COBE LABORATORIES, INC., a corporation,

     Defendant-Appellee and Cross-Appellant.

Nos. 98-1350 & 98-1363
(D. Colo.)
(D.Ct. No. 96-Z-2691)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **McWILLIAMS**, Circuit Judges, and **WEST**, District Judge.[**]

_____

     Plaintiff-Appellant Vicki Powell brought a gender-discrimination suit against her employer, COBE Laboratories, Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17. Ms. Powell also brought related state and federal claims. After the district court dismissed her related

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    [**] The Honorable Lee R. West, District Judge for the Western District of Oklahoma, sitting by designation.

claims, a jury found in favor of Ms. Powell and awarded her $571,144 in back pay and compensatory and punitive damages. The district court struck all punitive damages, reduced the compensatory damages to a level deemed reasonable, and entered an amended judgment awarding Ms. Powell $121,144 in back pay and compensable damages, plus costs and attorney fees. Ms. Powell now appeals numerous rulings of the district court, including the reduced damages award. COBE cross-appeals the district court's denial of its post-trial motion for new trial pursuant to Fed. R. Civ. P. 59(a) and 60(b)(3). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, affirm in part, vacate in part, and remand to the district court for further proceedings.[1]

BACKGROUND

Ms. Powell began working for COBE in 1975. Over the next twenty years, Ms. Powell worked in several positions in the company, including thirteen years as an administrative clerk in a warehouse. On July 24, 1995, COBE promoted Ms. Powell from her warehouse position to a position as a planner. A committee

---

[1] As a preliminary matter, Ms. Powell filed a motion to waive oral argument, which we granted in part. Pursuant to this Court's order, counsel for COBE was allowed to proceed with oral argument despite Ms. Powell's requested absence. The appearance or absence of a particular party at oral argument has no impact on the disposition of a case.

of several individuals, including her new supervisor, Jim Koehler, selected Ms. Powell for the planner position.

In her new planner position, Ms. Powell worked as a member of the purchasing management team supervised by Mr. Koehler, which included four women in addition to Ms. Powell. Ms. Powell earned $2,328 per month in the planner position, which amounts to $27,936 per year. Within several months of her appointment as planner, the other women in Ms. Powell's team began to complain to Mr. Koehler about her job performance. The women felt Ms. Powell lacked motivation, initiative and ability to do the planner job. Ms. Powell, on the other hand, felt the problem could be traced to the lack of procedures or quality training provided by COBE. Ms. Powell frequently inquired about formal procedures for the planner position but was told none existed. The problems culminated in a meeting with Mr. Koehler on December 19, 1995, at which time he asked Ms. Powell to prepare a document the two of them might use to evaluate her progress in her job and her training needs. After several subsequent requests, Ms. Powell submitted the document, albeit in an admittedly deficient state, during a follow-up meeting on January 12, 1996. After glancing at the document, Mr. Koehler passed it back to Ms. Powell and informed her of his decision to remove her from the planner position.

Mr. Koehler reassigned Ms. Powell, and gave her five weeks on the payroll to look for alternative employment within the company. In the event Ms. Powell did not find a job with COBE during this time, she was offered an entry-level production job to allow her to continue to search for what she determined to be suitable employment within the company. Ms. Powell eventually decided the open jobs at COBE either constituted demotions, or were positions for which she did not qualify, and she chose not to accept further employment at COBE. Ms. Powell claims it was during this time period, mid-February, when she complained to COBE personnel about possible gender discrimination.

During this five-week period, COBE also gave Ms. Powell the option of taking a severance package. Signing the severance agreement entitled Ms. Powell to twenty-three weeks of severance pay and a designation of her separation from the company as a voluntary termination/resignation. At one point, after she told a company official she did not wish to take the lower-level positions offered her, that official told Ms. Powell if she did not take the offered severance package or available positions, her separation would be designated a termination for cause/poor performance and she would receive just two weeks of pay in lieu of notice. Ms. Powell informed COBE officials she wished to take the severance package. However, when the day arrived for her to sign the package, Ms. Powell

refused to sign, and instead read a prepared statement claiming COBE discriminated against her based on gender, and the company coerced her to sign the severance package in an attempt to force her to relinquish her civil rights.[2] COBE then withdrew the severance package, gave Ms. Powell the lesser package of two weeks' pay, and escorted her out of the building.

COBE replaced Ms. Powell with a male – Wayne John Scheck. Mr. Scheck, a temporary employee at COBE, had no experience related to the planner position. Mr. Scheck's experience with the women in the purchasing management team starkly contrasted Ms. Powell's. Mr. Scheck described his team as "wonderful.... very helpful, very knowledgeable, very professional, reliable." While one of the reasons Mr. Koehler listed for removing Ms. Powell from the planner position centered on her lack of willingness to begin work every day

---

[2] The entire text of the statement is as follows:

> I have prepared a statement and would like to read it.
> 1. I decline to sign this separation agreement and release.
> 2. I wish to return to work tomorrow at my old job or at a comparable job.
> 3. I wish the company to do a job search and place me elsewhere.
> 4. I will consider any job opening at COBE commensurate with my experience, training and salary level.
> 5. I believe that I am being discriminated against because of my sex.
> 6. I also believe that COBE has illegally tried to coerce me into waiving my rights under the Civil Rights Act of 1964 by telling me that I would be fired if I did not sign the Separation Agreement and RELEASE.

between the hours of 6:00 and 7:00 a.m., Mr. Scheck began his day after 7:30 a.m. In addition, Mr. Scheck's starting salary was $32,000 per year, just over $4,000 more per year than Ms. Powell's salary.

Ms. Powell's suit originally stated several causes of action: a gender discrimination claim in violation of Title VII of the Civil Rights Act, a retaliation claim under Title VII, retaliation claims as violative of the public policy of the State of Colorado and the United States, and a breach of contract/promissory estoppel claim. The district judge dismissed all the claims save the gender-discrimination claim. The jury found COBE discriminated against Ms. Powell based on gender, and awarded her $71,144 in back pay and benefits, $300,000 in compensatory damages, and $200,000 in punitive damages. In response to numerous post-judgment motions, the district court reduced the compensatory damages to $50,000, struck all punitive damages by granting COBE's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), and awarded Ms. Powell $19,125 of the requested $126,891 in attorney fees. The court also denied COBE's motion for new trial based on attorney misconduct.

DISCUSSION

Ms. Powell appeals a plethora of issues, including the district court's: (1) various evidentiary and discovery rulings; (2) dismissal of her retaliation, contract, and public policy claims; and (3) reduction of compensatory and punitive damages, and attorney fees. COBE cross-appeals the trial court's denial of its motion for new trial. We examine each claimed error in turn.

Outstanding Motions

We must dispose of two outstanding motions before getting to the substance of this case. First, we deny Ms. Powell's Motion to File Supplemental Appendix as the additional material offered was either provided by COBE, or would not aid in the determination of this case. We also deny COBE's Motion for Sanctions, and instead express our concern with counsel for their conduct in this lawsuit. Unfortunately, this suit often seemed driven by a conflict between the attorneys as opposed to the facts of this particular case. We do not have the time or resources to catalogue every objection we have to the attorneys' conduct other than to echo the lament voiced by Senior District Judge Stuart, sitting by designation with the Eighth Circuit:

> The most troublesome aspect of this lawsuit is the lack of professionalism and civility displayed by the lawyers.... This case serves as an example of the unfortunate lack of civility in the practice of law which is receiving considerable attention at this

time.... The adversary process in the judicial arena does not require attorneys to be clothed in a suit of armor and fight to the bitter end. The parties, the profession, and the public all lose when the attorneys fail to treat each other with common courtesy.

*Miller v. Bittner*, 985 F.2d 935, 941 (8th Cir. 1993). The motions are denied.


Case No. 98-1350: Ms. Powell's Appeal

I. Evidentiary and Discovery Matters

Ms. Powell argues the district court erred by: (1) restricting her attorney's ability to contact non-managerial employees at COBE; (2) denying a motion for a preservation deposition of an unavailable witness; and (3) excluding hearsay evidence that certain members of Ms. Powell's hiring team wanted a man for the position for which she was hired. We review evidentiary and discovery rulings for an abuse of discretion. *McCue v. Kansas*, 165 F.3d 784, 788 (10th Cir. 1999) (citing *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995) (evidentiary rulings); *Davoll v. Webb*, 194 F.3d 1116, 1139 (10th Cir. 1999) (discovery rulings). Both types of rulings are subject to harmless error analysis. *Cf. Davoll*, 194 F.3d at 1139; *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1253 (1999). Having prevailed on her gender discrimination claim, we conclude Ms. Powell cannot show prejudice from the district court's rulings, and therefore we need not reach the issue of whether the

court abused its discretion.[3]

Ms. Powell first claims the trial court improperly prevented her counsel from contacting certain COBE employees.  This characterization of the record is a stretch.  The record shows the district court exhorting the attorneys on both sides of this dispute to work together:

> I think there [are] problems with your talking to defendant's employees out of the presence of defense counsel and not in a deposition, so I think you folks better talk about that.  You know the ethical rule about not talking to someone represented by opposing counsel; and if someone works for defendant, that's really an issue of whether that person is represented by opposing counsel through their employer.
>
> Why don't you talk about it and see if you can work out some solution.
>
> ...
>
> Why don't you try to work something out with [COBE's attorneys] – I'm sure [they] will be cooperative ... – so that you can find out the information you need to find out from [COBE's] employees.

In her opening brief to this Court, Ms. Powell argues Colorado Formal Ethics Opinion 69 states counsel may contact any non-managerial employee of an adverse party, in his or her capacity as a bystander witness, without violating the

---

[3] We note all the rulings cited as error on appeal related to proposed evidence of liability, not damages.

Colorado Rules of Professional Conduct. This argument may have merit, but it is precisely the type of formal argument and briefing Ms. Powell should have made to the district court. Ms. Powell's attorney chose a different path and arguably abandoned the issue, when in response to the district court's comments, counsel stated:

> Based upon the [c]ourt's comments, we won't be trying to contact any of them, because I fear the [c]ourt will find we shouldn't have. And we feel the ethical rule is very clear that if they are not managerial employees and not in a position to bind the company, we may call them. But we're not going to take that chance in this case. So all of this has gone for naught, and we won't take a chance on talking with them.

Before an issue can be raised on appeal, it must be "presented to, considered, and decided by the trial court." *Tele-Communications, Inc. v. Commissioner*, 104 F.3d 1229, 1233 (10th Cir. 1997) (quotation marks and citations omitted). Because Ms. Powell abandoned the argument, it is not clear the district court issued a final ruling on her interview request. However, even if Ms. Powell properly presented and preserved this issue at the district court level, and assuming the court's preliminary ruling amounted to an abuse of discretion, given her success at trial, Ms. Powell cannot show prejudice from the court's ruling.

For the same reason, Ms. Powell cannot show prejudice on the remaining evidentiary and discovery issues. In addition, Ms. Powell's briefing on these

-10-

issues is totally void of citations to legal authority. In such a case, we have the discretion to decline to consider the issues presented, including whether the district court erred by excluding hearsay testimony of Ms. Powell's hiring team's state of mind, or by denying her motion for a preservation deposition. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992); Fed. R. App. P. 28(a)(9)(A) ("the argument ... must contain appellant's contentions and the reasons for them, with citations to the authorities ... on which the appellant relies ...."). Thus, given Ms. Powell's briefing shortcomings, together with the lack of any showing of prejudice, we need not reach the evidentiary and discovery matters raised on appeal.

II. Dismissals

A. Public Policy Claims

Pursuant to Fed. R. Civ. P. 12(b)(6), the district court granted COBE's motion to dismiss Ms. Powell's claims for relief alleging COBE's actions violated the public policies of the State of Colorado and the United States. We review a Rule 12(b)(6) dismissal *de novo. Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

> [A]ll well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party. A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief. The court's function ... is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.

*Id.* (quotation marks and citations omitted). Finding no set of facts entitling Ms. Powell to relief on her public policy claims, we affirm the district court's grant of the motion to dismiss.

We begin by reviewing Colorado's law concerning public policy claims. Specifically,

Colorado adheres to the employment at-will doctrine, which provides that an employee who is hired for an indefinite period of time "is an 'at-will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action."

*Crawford Rehabilitation Serv., Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997) (quoting *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). However, Colorado recognizes "an exception to this general rule in situations where the employer terminated the employment contract in violation of public policy." *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 523 (Colo. 1996) (en banc) (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108-09 (Colo. 1992) (en banc)). In order for Ms. Powell to establish a *prima facie* case for wrongful discharge under the public policy exception, the Colorado Supreme Court requires evidence of four elements: (1) COBE directed Ms.

Powell to forego the exercise of an important job-related right or privilege; (2) COBE's direction violated a specific statute relating to the public health, safety, or welfare, or undermined a clearly expressed public policy relating to Ms. Powell's right or privilege as a worker; (3) COBE terminated Ms. Powell because she refused to perform the act directed by COBE; and (4) COBE was aware, or reasonably should have been aware, that Ms. Powell's refusal to comply with the directive centered on her reasonable belief the action ordered violated her legal right or privilege as a worker. *Lorenz*, 823 P.2d at 109. As we understand Ms. Powell's complaint, it alleges COBE fired her because she refused to sign the severance package which included a waiver of her right to file any future discrimination suit against the company.

In examining Ms. Powell's argument, we focus on the second articulated element Ms. Powell is required to show. Specifically, Ms. Powell fails to point to a single statute or case demonstrating the actions alleged in the complaint "undermined a clearly expressed public policy" relating to her right or privilege as a worker.[4] Instead, Ms. Powell's counsel merely argued to the district court

---

[4] The only Colorado case Ms. Powell cites in support of her position is *Lorenz*, but she does so only to highlight the underlying rationale behind the exception. The actual facts of *Lorenz* are inapposite here. In *Lorenz*, the employee was fired after refusing a superior's order to cover-up quality control deficiencies in several NASA projects. The employee was forced to choose between losing his job and violating provisions of 18

-13-

that neither federal nor state anti-discrimination statutes provided any remedy to Ms. Powell for refusing to waive her civil rights. By failing to point to a violation of a specific statute, constitutional provision, case law, or some other valid expression of public policy, Ms. Powell cannot establish a prima facie case for wrongful discharge under the public policy exception. Instead, Ms. Powell's argument seems to suggest COBE's behavior so obviously violated some unidentified Colorado public policy that the district court could allow her claim to go forward without meeting the strict dictates set out by the state legislature or courts. We hold the district court correctly rejected this invitation to impinge on Colorado's desire to keep the public policy exception a narrowly-tailored one. *See Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 249 (10th Cir. 1993).

### B. Contract Claim

The district court granted COBE's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c), dismissing Ms. Powell's claim, asserting contract and estoppel causes of action. We detailed our standard of review in such cases in *Simms v. Oklahoma*, 165 F.3d 1321 (10th Cir.), *cert. denied*, 120 S. Ct. 53 (1999):

> We review the district court's grant of summary judgment de

---

U.S.C. § 1001. *See Lorenz*, 823 P.2d at 111. The choice allegedly offered Ms. Powell was quite different.

-14-

novo, applying the same legal standard used by the district court. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof.

*Id.* at 1326 (quotation marks and citations omitted). After reviewing the extremely sparse record on appeal concerning this issue, we affirm the district court's grant of summary judgment dismissing the contract and estoppel claims.[5]

We begin by noting the Colorado courts recognize companies can

---

[5] Apparently because the district court struck it as prolix, the record on appeal does not contain Ms. Powell's responsive brief to COBE's motion for summary judgment. *See* 10th Cir. R. 10.3(D)(2). This makes it difficult for us to perform our appellate function. Normally we could try to discern what a party presented to the district court by looking to the court's order. Unfortunately, the entire extent of the district court's rationale for granting the motion is contained in the following statement at the hearing: "We do have a breach of contract/estoppel claim by the plaintiff; and ... the law is pretty clear, at least to me, that just because someone posts some policies does not create an enforceable contract.... [T]he motion for summary judgment must be granted." However, despite the absence of Ms. Powell's brief and the district court's short analysis, we are nonetheless able to make a determination on the contract claim given Ms. Powell's inability to provide evidence supporting her claim an employment contract existed.

-15-

effectively alter the at-will status of employees through published employee handbooks and policies. The policies can lead to the creation of a contract between employer and employee, or can induce justifiable reliance by the employee, creating causes of action based on breach of contract and promissory estoppel. *See Keenan*, 731 P.2d at 711-12. In order for a company policy to qualify as an offer in the contract context, it must "contain terms 'sufficiently definite to enable the court to determine whether the contract has been performed.'" *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (quoting *Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960)). "[W]hile the existence of an implied contract is normally a factual inquiry for the jury, the issue may be decided as a matter of law if the alleged promises are nothing more than vague assurances." *Id.* (quotation marks and citations omitted).

COBE's employee handbooks or manuals are not at issue here. Ms. Powell admitted she had no knowledge of any COBE personnel policy dealing with discrimination. Ms. Powell's contract claim is based solely on her observation of an 8 ½ by 11 sheet of paper posted on a bulletin board near the human resource area at COBE announcing job openings. While Ms. Powell could not remember exactly what the paper said, she did agree with the characterization of the paper as a document explaining the illegality of discrimination. In its brief

accompanying the motion for summary judgment, COBE stated the document

contained only the mandatory notice all employers must post pursuant to Title

VII.  *See* 42 U.S.C. § 2000e-10(a).  However, the document itself is not in the

record on appeal, and we have no other way of knowing the context or actual

language of the document.

COBE, as the movant for summary judgment, had the initial burden of

showing the absence of a genuine issue of material fact and its entitlement to

judgment as a matter of law.  *See Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664,

670-71 (10th Cir. 1998).  Once COBE met that burden, which it did by drawing

the district court's attention to the lack of evidence presented by Ms. Powell on

the contract and estoppel claims (*id*. at 3427-29), the burden shifted to Ms. Powell

to come forward with specific facts, admissible in evidence at trial, which could

allow a rational jury to find in her favor.  *Id*. at 671.  "To accomplish this, the

facts must be identified by reference to affidavits, deposition transcripts, or

specific exhibits incorporated therein."  *Id*.  We do not know what Ms. Powell

argued to the district court on this matter, but in her brief to this Court, Ms.

Powell fails to make any argument or point to any evidence in the record

supporting her assertion this document constituted an offer under contract law.  In

fact, her brief on this issue is limited to two sentences stating the basic rule,

which is not disputed here, that a posted policy of a corporation forbidding discrimination in the workplace can be the basis of a contract claim under pertinent case law. Ms. Powell failed to present any evidence tending to show the document at issue in this case constituted a policy of the corporation, or that the document's specific language was sufficient to form the basis of a contract claim. Having studied the limited record on this issue, we determine the district court properly granted summary judgment and dismissed Ms. Powell's contract claim.

## C. Retaliation Claim

At the close of Ms. Powell's case, the district court dismissed her Title VII retaliation claim in response to COBE's motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1).

> We review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court. Such a judgment is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.... We must view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party.

*Baty v. Willamette Indus.*, *Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (quotation marks and citations omitted).

Keeping this standard of review in mind, we note Title VII states an

employer may not "discriminate against any of his employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, Ms. Powell must prove:  "(1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action." *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993).

Viewing the evidence most favorably to Ms. Powell, she participated in a protected activity in mid-February by complaining to the Director of COBE's Human Resources Department, Kathe Burke, about discrimination based on her gender.  However, the district court determined the only adverse action in this case occurred on January 12, when Mr. Koehler removed Ms. Powell from the planner position and gave her five weeks on the payroll to find other employment within COBE or take a production job.  Placing the adverse action one month prior to Ms. Powell's protected activity clearly defeats any causal connection between the two events, and therefore the district court found no prima facie case for retaliation.

On appeal, Ms. Powell argues a second adverse action arose when COBE personnel (1) told her on February 26 that the consequences of not signing the severance agreement or taking a position would be termination for cause and only two weeks' pay, as opposed to the large severance package, and (2) subsequently discharged her on February 29 because she refused to sign the severance agreement.

In determining whether Ms. Powell's retaliation claims lack merit, we liberally define the term "adverse employment action" and must make our determination of whether a given employment action is "adverse" on a case-by-case basis. *See Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998). Given the specific facts of this case, we agree no adverse action existed after January 12, and affirm the district court's grant of the motion for judgment as a matter of law.

We reach this conclusion based on an exhaustive review of the record, which reveals several relevant facts. First, COBE removed Ms. Powell from her planner position on January 12. (Apt. App. Vol. III at 869.) On her removal from the planner position and reassignment to a temporary position within the company, COBE gave Ms. Powell five weeks, which meant until February 19, to

-20-

either take another position within COBE or be severed from COBE's payroll. All parties involved, including Ms. Powell, understood this arrangement. Specifically, during a meeting on January 29 with Kathe Burke, Ms. Powell stated, "I have ... until the nineteenth of February ... [a]nd then I'm not, I won't be on salary any more." The only open question at this point was whether Ms. Powell would choose to take the employment opportunities available within COBE, take a severance package, or leave COBE without taking the severance package. During a meeting with Mr. Koehler on the decision day of February 19, Ms. Powell stated she could not find a job within COBE she wanted, and she flatly turned down the production job COBE promised to provide in order to give her more time to search for employment within the company. Ms. Powell made it clear she wanted to pursue the severance package option, and Mr. Koehler accommodated her by offering to keep her on the payroll until such time as she could sit down with company representatives and fill out the paperwork required for the severance package. During a meeting on February 22, Ms. Powell again confirmed February 19 as the date her employment with COBE officially terminated. At this same meeting, Ms. Burke fully explained the provisions of the severance package and informed Ms. Powell she would remain on the payroll until February 29, the day she was to sign the severance package. Four days later, on February 26, Ms. Burke told Ms. Powell the consequences of not signing the

severance package: two weeks' pay instead of twenty-three weeks' and a termination for cause instead of a voluntary resignation. On February 29, after Ms. Powell refused to sign the severance package, COBE discharged her.

Under the circumstances, we cannot characterize the events of February 26 and 29 as adverse employment actions when Ms. Powell's discharge was predetermined on January 12. *Cf. Connell v. Bank of Boston*, 924 F.2d 1169, 1179-80 (10th Cir.), *cert. denied*, 501 U.S. 1218 (1991). On appeal, Ms. Powell takes exception to this statement, pointing to the company's efforts to find her alternative employment as proof the parties did not know for certain Ms. Powell would be leaving the company. While technically true, this logic fails to recognize that as of January 12, Ms. Powell controlled her employment or discharge destiny. On February 19, at the first documented meeting with Ms. Powell after she allegedly complained she would have been treated differently if she were a man, Mr. Koehler continued to offer her a production job within COBE. Ms. Powell flatly turned him down. After this meeting, COBE continued to offer Ms. Powell the severance agreement, which she also refused to accept. Having personally eliminated the alternatives to discharge, we fail to comprehend how Ms. Powell can claim the end result constituted an adverse employment action separate and distinct from the January 12 removal. In sum, Ms. Powell

fails to establish a prima facie case on her retaliation claim by failing to show a casual connection between the assumed protected activity of raising her discrimination complaints and any adverse action. Therefore, we affirm the district court's grant of the motion for judgment as a matter of law.

III.  Reduction of Damages and Attorney Fees

Ms. Powell also appeals the district court's reduction of the jury's award of emotional distress damages, the setting aside of all punitive damages awarded by the jury, and the reduction of Ms. Powell's requested attorney fees. We review the district court's reduction of compensatory damages for a manifest abuse of discretion. *Baty*, 172 F.3d at 1241. The district court's decision to grant the motion for judgment as a matter of law and set aside the punitive damage award is a question of law we review de novo. *Id*.; *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 995 (10th Cir. 1999). We review the award of attorney fees for abuse of discretion. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998).

A.  Emotional Distress Damages

The jury awarded Ms. Powell $300,000 for pain, mental anguish, and emotional distress. The district court found this award excessive and unsupported

by substantial evidence, and reduced it to $50,000. Ms. Powell offered limited evidence in support of her emotional distress damages. Ms. Powell testified she was "very sad, very depressed, very upset" after her employment at COBE ended. She also testified the experience had a "major impact" on her entire family, she cried every day, sought help from a psychotherapist, and sought treatment from a physician for migraine headaches. Ms. Powell's psychotherapist also testified briefly, stating she observed symptoms of stress, anxiety, worry, depression, anger and a sense of powerlessness in Ms. Powell. In reducing the jury award, the district court found the scant evidence presented in this case analogous to the evidence presented in *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989). In *Wulf*, the plaintiff testified his job loss caused stress, anger, depression, and frustration; his wife testified the job loss caused severe emotional strain and financial difficulties. *Id.* at 875. We found this evidence wanting, and reduced an award for emotional distress of $250,000 to $50,000. *Id.* While the jury in the current case heard testimony from Ms. Powell's treating psychotherapist which seemed to corroborate Ms. Powell's testimony, the limited depth and detail of the testimony here is comparable to *Wulf*. For instance, the extent of the evidence offered in support of emotional distress damages filled less than five of the nearly 550 trial transcript pages required for the presentation of Ms. Powell's case. Neither the psychotherapist's nor Ms. Powell's testimony was developed to any

-24-

significant degree. Given the facts of this case, the district court did not

manifestly abuse its discretion by looking to comparable cases and reducing the

jury's award to $50,000.[6]


B. Punitive Damages

Consistent with 42 U.S.C. § 1981a(b)(1),[7] the jury received instructions that

punitive damages were appropriate only if COBE discriminated against Ms.

Powell with "malice or reckless indifference" to her rights to be free from such

conduct. In its order striking the jury's award of $200,000 in punitive damages,

the district court relied on our language in *Fitzgerald v. Mountain States Tel. &*

*Tel. Co.*, 68 F.3d 1257, 1263 (10th Cir. 1995), to find insufficient evidence

existed for the jury to find the discrimination in this case "malicious, willful, and

---

[6] We note the district court failed to provide Ms. Powell a choice between accepting the remittitur or a new trial on damages. *See Hetzel v. Prince William County,* 523 U.S. 208 (1998). However, Ms. Powell did not raise the issue with the district court, nor did she ever point to the oversight as error on appeal. She does mention *Hetzel* in her reply brief, but she does so only to argue *Hetzel* is inapposite because the court's reduction of the damage award in this case was not a remittitur. Given the woefully inadequate understanding both parties have of *Hetzel*, and the resulting low quality of the briefing, we will enforce our general rule of not considering issues raised for the first time in the reply brief. *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277-78 (10th Cir. 1994) (holding one reason for general rule is our reliance on the adversarial process to develop issues on appeal and well-reasoned opinions).

[7] This statute allows a litigant, successful in bringing a civil rights action under § 2000(e), to recover compensatory and punitive damages under certain circumstances.

in gross disregard of plaintiff's rights."

Subsequent to the district court's order, the United States Supreme Court clarified the test used when determining whether punitive damages are appropriate in a Title VII case. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999). The Court ruled "the terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at ___, 119 S. Ct. at 2124. The Court also held a plaintiff is not required to make a "showing of egregious or outrageous discrimination independent of the employer's state of mind" in order to make a case for punitive damages under § 1981a. *Id.* However, the Court also recognized the traditional limits on vicarious liability for punitive damages and held "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 2129 (quotation marks and citation omitted).

Given the Court's pronouncements in *Kolstad*, many intentional discrimination cases may meet the "malice or reckless indifference" requirement

of § 1981a. *See id.* at 2125 (listing limited circumstances where intentional discrimination would not give rise to punitive damages under the standard developed). However, just as apparent is Chief Justice Rehnquist's observation "that principles of agency law place a significant limitation, and in many foreseeable cases a complete bar, on employer liability for punitive damages." *Id.* at 2130 (Rehnquist, C.J., concurring in part and dissenting in part).

The parties in this case did not have the opportunity to brief the implications of *Kolstad* on appeal, nor are we convinced the record is sufficiently developed for us to review the district court's grant of COBE's Rule 50 motion using the *Kolstad* standard. Therefore, we will vacate the district court's grant of the motion for judgment as a matter of law as it relates to punitive damages, and remand for further proceedings consistent with this opinion. As in *Kolstad*, we expect it may be necessary for the district court to determine the extent, if any, of COBE's good faith efforts to comply with Title VII.

C. Attorney Fees

Finally, we turn to the issue of attorney fees. Ms. Powell requested attorney fees in the amount of $126,891. In support of this request, Ms. Powell's counsel, John Olsen, submitted billing records claiming he and his co-counsel

worked over 613 hours on the case. Mr. Olsen also provided the district court with his own affidavit, and a supporting affidavit from one other attorney, claiming the appropriate fee in this case equaled $200 per hour for out-of-court work and $300 per hour for courtroom appearances. The district court found the affidavits "conclusory and insufficient," and based on its own experience in employment discrimination cases, reduced the reasonable rate recoverable for all time spent on the case to $125 per hour. The court also examined Mr. Olsen's billing records and determined they were "suspect," not prepared contemporaneously, or in a meticulous manner. Citing the inadequate nature of the records, "countless instances of inappropriate and unprofessional conduct by plaintiff's counsel," time wasted on unnecessary activity, and the fact Ms. Powell prevailed on only one of her five original claims, the district court reduced the total time claimed for the lawsuit by seventy-five percent, to 153 hours, and limited the award of attorney fees to $19,125. Based on the unique facts of this case, we hold the district court did not abuse its discretion in arriving at this award.

1. Hours

The first step in calculating the "lodestar" figure used to award attorney fees is to determine the reasonable number of hours counsel spent on the case.

> Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records .... A district court is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time.

*Case*, 157 F.3d at 1250 (quotation marks and citation omitted). In support of its conclusion Ms. Powell's counsel submitted inadequate records, the district court pointed out the records failed to mention at least two court appearances. While we agree with Ms. Powell's observation that an attorney should not be punished for failing to bill a client for work, the omission here does tend to show the time records were not contemporaneous, especially considering Mr. Olsen was careful enough to include billing requests for his travel time to and from the courthouse for his other court appearances, including one entry for travel, parking, and walking which amounted to ninety minutes of billable time for a fifteen minute hearing with the magistrate judge. In addition, the entries submitted are insufficiently detailed to allow the district court to determine how much time Ms. Powell's attorneys spent on her unsuccessful claims. The district court further found both parties to this litigation expended much of their time on frivolous issues. Having reviewed the correspondence between the attorneys in the record, much of which contained sophomoric accusations of some type of misconduct by the other party, we must agree. As further evidence of wasted time in this case, the district court points to Ms. Powell's filing of a ninety-six-page response to

COBE's motion for summary judgment, which it struck as prolix. The district court estimated the response should have been no longer than fifteen pages. Mindful of the district court's unique expertise in determining the reasonable amount of time required for a particular case, *see id.* at 1256, and based on our review of the record before us, we hold the district court did not abuse its discretion by reducing the requested hours by seventy-five percent.

### 2. Hourly Rate

While the district court must rely on its own experience in determining the reasonable number of hours spent on litigation, the court "should base its hourly rate award on what the evidence shows the market commands for ... analogous litigation." *Id*. at 1255. However, the court may utilize its own knowledge and experience in establishing the reasonable rate when the evidence presented on the prevailing market rate is inadequate. *Id*. at 1257. We agree with the district court's characterization of the affidavits submitted in support of the requested hourly rates as "conclusory and insufficient." Neither affidavit sufficiently addresses the prevailing market rate for civil rights litigation – a requirement we found important in *Case*. *Id*. at 1255-56. Mr. Olsen's affidavit attests his

> hourly legal fee rate is $200 per hour out-of-court and $300 in-court.... The $200/$300 rate ... reflects the market rate in the Denver metropolitan area for attorneys of 20 years' experience practicing in the area of litigation.... It is my experience that attorneys

-30-

specializing in litigation in the Denver area charge $200 or more per hour, and said rate is reasonable in this market area.

Counsel's conclusory statements of his normal billing practice and market rate are insufficient to adequately show the prevailing market rate:

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (quoted in *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996); *Beard v. Teska*, 31 F.3d 942, 955 (10th Cir. 1994)). In addition, the affidavit speaks to reasonable rates for "litigation," but does not address rates for civil rights litigation specifically.

The supporting affidavit of attorney Mary Casey suffers from a similar deficiency. Ms. Casey does not purport to be an expert on civil rights litigation, nor does her affidavit mention prevailing market rates for civil rights litigation. Instead, Ms. Casey asserts

> [a]ttorneys of 20-years' experience routinely charge $200 per hour for the provision of legal services out of court. The partners at Denver's larger law firms with fifteen or more years of experience routinely charge $300 to $450 per hour for the provision of legal services. Moreover, litigation specialists, which both Mr. Olsen and Ms. Brown are, routinely charge $300 per hour when they are actually in court.

Ms. Casey concludes by stating the rates claimed by Mr. Olsen are "fair" in this

case.  These bald, conclusory assertions similarly provide insufficient guidance to the district court on the issue of the prevailing market rate for civil rights litigation in the Denver area.  Under these circumstances, the district court did not abuse its discretion by rejecting these affidavits, and applying its own knowledge and experience to arrive at the $125 per hour rate.

Case No. 98-1363:  COBE's Cross-Appeal

COBE cross-appeals the district court's denial of its motion for new trial pursuant to Fed. R. Civ. P. 59(a) and Fed. R. Civ. P. 60(b)(3).  We review the court's decision to deny the motion for a new trial for an abuse of discretion.  *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1230-31 (10th Cir. 1999); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 962 (10th Cir. 1993).  In support of its claim a new trial is warranted, COBE points to repeated acts of alleged attorney misconduct throughout the trial.  Rule 60(b)(3) provides discretionary relief from a judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."  Relief under this section is "extraordinary and may only be granted in exceptional circumstances."  *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).  COBE must prove this misconduct by clear and convincing evidence.  *Yapp*, 186 F.3d at 1231.  A new trial based on attorney

misconduct is only appropriate when the moving party is prejudiced by the misconduct. *Ryder v. City of Topeka*, 814 F.2d 1412, 1424 (10th Cir. 1987). The district court did not abuse its discretion in finding COBE was not sufficiently prejudiced in this case to warrant a new trial.

The vast majority of COBE's complaints go to counsel's misstatement of the evidence during opening and closing arguments, and counsel testifying during examination of witnesses.[8] However, the district court properly instructed the jury that the statements of counsel were not evidence in the case. In addition, the district court sustained numerous objections to the improper questions, and instructed the jury to ignore this evidence. COBE fails to show counsel's arguable misconduct overcame these corrective measures and prejudiced the trial, or preparation for trial, in any way. We do not give short shrift to COBE's claim. After reviewing the record, we agree with the district court's characterization of Ms. Powell's counsel's conduct during the course of this case as "inappropriate

---

[8] COBE also claims Ms. Powell's attorney's misrepresentations caused the district court to disallow evidence of a plaintiff's witness' bias, and contributed to the district court's decision to deny a motion to endorse additional witnesses as untimely. We hold these arguments lack merit. The district court was concerned throughout trial with avoiding mini-trials on issues unrelated to the alleged discrimination at issue in this case. The district court's rulings were designed to avoid such periphery issues and fall well within the court's discretion. In addition, nothing in the record convinces us a new trial is warranted.

and unprofessional," and that he made numerous "inappropriate or inadmissible" statements. However, "[a] new trial is not to be granted simply as a punitive measure to punish the misconduct of counsel." *Id*. at 1425. We have carefully reviewed all of COBE's claimed acts of misconduct and simply do not find grounds for holding the district court abused its discretion in denying its motion for a new trial.

Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for the sole purpose of re-examining the punitive damage issues consistent with this decision and *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999).

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge